UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BILLIE JOHNSON,<br><br>                    Plaintiff,<br><br>    v.<br><br>STATE OF WASHINGTON, MAGGIE MILLER-STOUT, WENDY STIGALL, LORRAINE CREVIER, WINIFRED WILLIAMS, GAIL CLARKE, CHRISTOPHER FITZPATRICK, JOHN DOES 1-6, DEPARTMENT OF CORRECTIONS, JOHN DOE STOUT, JOHN DOE STIGALL, JOHN DOE CREVIER, JOHN DOE WILLIAMS, JANE DOE FITZPATRICK, JOHN DOE CLARKE,<br><br>                    Defendants. | CASE NO. 14-cv-06012-RJB<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' Motion and Memorandum for Summary Judgment and Dismissal. Dkt. 14. The Court has considered the pleadings filed in support of, and opposition to, the motion and the file herein.

//

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 1

# PROCEDURAL HISTORY

Originally filed in the Thurston County Superior Court, plaintiff's complaint alleges a federal claim based on 42 U.S.C. § 1983 and state law claims based on false imprisonment and negligent supervision. Dkt. 4-1.

On February 20, 2015, defendants filed a motion for a summary judgment and dismissal. Dkt. 14. On March 16, 2015, plaintiff filed a response (Dkt. 21), and on March 20, 2015, defendants filed a reply (Dkt. 23).

# RELEVANT FACTS

On June 22, 1998, the Kitsap County Superior Court entered a Judgment and Sentence, Cause Number 97-1-01054-1, sentencing Mr. Larry W. Fields under Washington State's Special Sex Offender Sentencing Alternative ("SSOSA") on his guilty plea for two counts of attempted first degree child molestation and one count of attempted second degree child molestation. Dkt. 16, at 24-31. The court sentenced Mr. Fields to four months in confinement and to 93.5 months in community custody, a total of 97.5 months ("1998 sentence"). *Id*.

On August 31, 2004, after Mr. Fields served the four months in the Kitsap County Jail and while he was in community custody on the SSOSA sentence, Mr. Fields' probation officer discovered a "marijuana grow operation" on Mr. Fields' property. Dkt. 17, at 21-27. He subsequently pleaded guilty to one count of manufacture of marijuana. *See* Dkt. 16, at 33-41

On October 20, 2004, the Kitsap County Superior Court entered a Judgment and Sentence, Cause Number 04-1-01357-5, sentencing Mr. Fields to 12 months and one day incarceration on his guilty plea to one count of manufacture of marijuana. *Id*. The Judgment and Sentence, dated October 20, 2004, was silent as to whether this sentence should run concurrently with, or consecutive to, Mr. Fields' 1998 sentence. *Id*., at 35. It appears that the Kitsap County

1  Superior Court did not consider this question at the time because the suspended portion of Mr.

2  Fields' SSOSA sentence had not yet been revoked.

3        On November 17, 2004, the Kitsap County Superior Court orally revoked Mr. Fields'

4  suspended SSOSA sentence, under Cause Number 97-1-01054-1, orally sentencing him to serve

5  the 12 months and one day concurrently with his 1998 SSOSA sentence. Dkt. 22, at 18-28.

6        On November 19, 2004, the Kitsap County Superior Court issued an Order Amending

7  Judgment and Sentence, under Cause Number 97-1-01054-1, reflecting that Mr. Fields will no

8  longer be on SSOSA. Dkt. 17, at 37. This order failed to incorporate the Kitsap County Superior

9  Court's oral ruling, dated November 17, 2004, that Mr. Fields' SSOSA sentence be revoked or

10 that the sentences run concurrently. *Id*.

11       On February 9, 2005, the Kitsap County Superior Court issued an Order Revoking

12 SSOSA sentence, revoking Mr. Fields' suspended SSOSA sentence and ordering that Mr. Fields

13 "serve all previously suspended sentence with the [Department of Corrections]." Dkt. 16, at 43.

14 This order also failed to reflect the Kitsap County Superior Court's oral ruling, dated November

15 17, 2004, that Mr. Fields' sentences run concurrently. *Id*.; *See* Dkt. 16, at 49-50.

16       When Mr. Fields began his incarceration on November 23, 2004, the Department of

17 Corrections ("DOC") calculated his sentences as concurrent. Dkt. 22, at 30. *See* Dkt. 14, at 17. In

18 fact, subsequent 2006 and 2009 intake audits show that Mr. Fields' sentences ran concurrently.

19 Dkt. 22, at 32-33. Accordingly, Mr. Fields' maximum expiration date was set as September 29,

20 2012. Dkt. 16, at 4. Although in 2010 Mr. Fields was eligible for community custody at an

21 approved address in lieu of earned release time, he elected to remain in prison until September

22 29, 2012, the maximum expiration date. *Id.*, at 16.

23

24

In early September 2012, Mr. Fields discovered that the DOC had failed to give him credit for the four months served in the Kitsap County Jail. *See* Dkt. 22, at 40. As a result, on September 12, 2012, Mr. Fields filed a grievance with the DOC, stating that "[his] sentence had been served in its entirety as of May 29, 2012 and that to date [he's] been imprisoned for 101 days beyond the 97 month maximum sentence." *Id*. That same day, Ms. Lorraine Crevier, a Correctional Records Technician, emailed the Kitsap County Jail, stating that "[Mr. Fields] will be releasing on his max date of 9/29/12" and asking whether "[Mr. Fields] gets any credit at [the Kitsap County Jail] from 1998." *Id.*, at 15. On September 13, 2012, the Kitsap County Jail confirmed that Mr. Fields had spent time there from May 20, 1998, to August 12, 1998. *Id*.

On September 24, 2012, five days before Mr. Fields' expected maximum expiration date, the DOC acknowledged that it had not previously given him credit for the time served in the Kitsap County Jail. *Id.*, at 40; Dkt. 16, at 47; *See* Dkt. 16, at 5-6 ("The [DOC] records prior to that time did not include that Mr. Fields received 84 credits from Kitsap County Jail for the time he served in 2004"). The DOC did not release Mr. Fields, however. Instead, the DOC informed him that it was recalculating the two sentences as consecutive and that his maximum expiration date would be July 7, 2013. Dkt. 22, at 40.

Specifically, Ms. Crevier stated in her declaration that, following *Dress v. Washington State Dep't of Corr.*, 168 Wn. App. 319 (2012), she reviewed Mr. Fields' "2004 judgment and sentence," finding "no language [therein] or any other superior court order directing the 2004 sentence to run concurrently to his 1998 judgment and sentence." Dkt. 16, at 4. As a result, she determined that the two sentences should run consecutively. *Id.*, at 5.

In addition, Ms. Wendy Stigall, a Correctional Records Program Administrator, stated in her declaration that she "concurred with Ms. Crevier's reading of Mr. Fields' 2004 judgment and

sentence as consecutive to his 1998 judgment and sentence because the 2004 judgment and sentence was silent on the issue of whether it was concurrent" and because "reading it as concurrent would require insertion of language that the court did not include in the 2004 judgment and sentence or other orders." Dkt. 15, at 4. Accordingly, Ms. Crevier reset Mr. Fields' maximum expiration date from September 29, 2012, to July 7, 2013. Dkt. 16, at 47.

On January 3, 2013, Mr. Fields submitted an offender's kite to the DOC, stating that the Kitsap County Superior Court had ordered that the two sentences run concurrently. Dkt. 22, at 52. On February 8, 2013, the DOC responded as follows: "Kitsap Causes AA & AB were reviewed per Dress decision [and] found at that time to be consecutive causes." *Id*.

On February 21, 2013, Mr. Fields filed a Motion to Modify or Correct Judgment and Sentence with the Kitsap County Superior Court. Dkt. 17, at 9-40. In response, on March 8, 2013, the Kitsap County Superior Court entered an Order Amending the Judgment and Sentence and Order Revoking SSOSA Sentence, under Cause Number 97-1-01054-1, to include the following language: "The sentence in this case shall be served concurrently with the sentence ordered in [the 1998 case]." Dkt. 16, at 49-50. The court explained that its Order Revoking SSOSA sentence, dated February 9, 2005, "failed to specifically include language stating that the prison term on the revoked SSOSA sentence was to be served concurrently with the prison term imposed in the drug case." *Id*., at 49. Mr. Fields was released on March 15, 2003.

Before the present action ensued, Mr. Fields died. Ms. Billie Johnson, Mr. Fields' estate's personal representative, is the plaintiff in the present action. Dkt. 4-1.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 5

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1106 (9th Cir.2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. *Id.; See also Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 885 (1990); *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1409 (9th Cir.1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan,* 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. *Nissan,* 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. *Id.*

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. *Id.* This is true even though the non-moving party bears the ultimate burden of persuasion at trial. *Id.* at 1107.

//

//

DISCUSSION

Defendants' argument is threefold: (1) defendants are entitled to absolute immunity; (2) defendants are entitled to qualified immunity; and (3) plaintiff's state law claims for false imprisonment and negligent supervision lack merit. Dkt. 14.

The Court need not decide whether defendants are entitled to absolute immunity because the Court should grant defendants summary judgment on the basis that defendants are entitled to qualified immunity. As to plaintiff's state law claims, the Court should allow the parties to show cause why the Court should not decline to exercise supplemental jurisdiction on those claims.

**A.  Qualified immunity on plaintiff's § 1983 claim**

Defendants argue that they are entitled to qualified immunity for two reasons. First, they argue that no clearly established law (a) compelled the DOC to run Mr. Fields' sentences concurrently; (b) prevented the DOC from correcting their "previously erroneous readings of his 2004 judgment and sentence as concurrent"; or (c) compelled the DOC to "petition the court to address the absence of any written directive by the court in any order that [Mr. Fields'] sentence be served concurrently, rather than consecutively." Dkt. 14.

Second, defendants argue that Mr. Fields has failed to demonstrate that they deprived him of a federally-protected right under § 1983. *Id*. Specifically, defendants argue that "in the absence of a proposed released address and a superior court order directing his 1998 and 2004 sentences be treated concurrently, Mr. Fields had no constitutionally protected interest in release from prison on any particular date prior to his release date of March 15, 2003." *Id*. Additionally, defendants argue that Mr. Fields cannot demonstrate that defendants deprived him of "something the Constitution guarantees him" because he "held the key to his prison cell," refusing to provide

1   a release address, which would have enabled the DOC to release Mr. Fields into community

2   custody after his early release date and before his maximum expiration date. *Id*.

3         In response, plaintiff argues that *Dress* and its sister cases "have made clear, without fail,

4   that the DOC has no authority to correct or change an inmate's sentence, even where it is

5   perceived to be 'clearly erroneous'" and that the DOC violated Mr. Fields' constitutional rights

6   when the DOC so corrected or changed Mr. Fields' sentencing structure as to confine him past

7   his true maximum expiration date. Dkt. 21.

8         In addition, plaintiff requests that the Court deny defendants' motion under Fed. R. Civ.

9   P. 56(d)(1). *Id*. Plaintiff argues that a summary judgment at this stage would be premature

10  because the parties have not conducted any discovery, expecting that discovery will reveal,

11  among other things, facts relating to (a) defendants' specific knowledge and actions; (b) the

12  DOC's allegedly flawed process for reviewing judgments and sentences; and (c) plaintiff's

13  claims for deliberate indifference. *Id*.

14        In reply, defendants argue that plaintiff has failed to demonstrate a clearly established

15  federal law supporting plaintiff's claims. Dkt. 23. Specifically, defendants argue that plaintiff has

16  cited only to state law, which is insufficient under § 1983, for the proposition that the DOC is not

17  allowed to unilaterally modify court orders. *Id*. In addition, defendants cite to *Engebretson v.*

18  *Mahoney*, 724 F.3d 1034 (9th Cir. 2013), for the proposition that prison official have no duty to

19  investigate a court order's legality. *Id*.

20        Finally, defendants argue that plaintiff is not entitled to a continuance under Fed. R. Civ.

21  P. 56(d) because issues of immunity "depend on law, not on facts supposedly elicited from

22  depositions or written discovery… ." *Id*.

23  //

24

*1. Standard*

In a § 1983 action, defendants are entitled to qualified immunity from damages for civil liability as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id*.

In addition, the privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity also protects a defendant from having to bear the burdens of such pretrial matters as discovery. *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996). *See also Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993). In analyzing a qualified immunity defense, courts are "permitted to exercise sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Finally, a plaintiff has the burden of overcoming qualified immunity by showing that the plaintiff's right a defendant allegedly violated was clearly established at the time of the alleged

misconduct. *Baker v. Racansky*, 887 F.2d 183, 186 (9th Cir. 1989) (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984)).

*2. Discussion*

The record shows that defendants have met their burden of production by showing that plaintiff's right, which defendants allegedly violated, was not clearly established when the DOC recalculated Mr. Fields' sentences. In response to defendants' showing, plaintiff may produce specific evidence that a genuine issue of material fact exists as to whether it would be clear to a reasonable official that recalculating Mr. Fields' sentences was unlawful under the circumstances. Plaintiff has failed to produce such evidence.

First, *Dress* is distinguishable. There, believing the judgment and sentence to be erroneous, the DOC ran Dress' sentences consecutively, even though her judgment and sentence stated that the sentences should run concurrently. *Dress*, 168 Wn. App. at 322-24. The court held that the DOC did not have "the authority to either correct or disregard the provisions of an allegedly erroneous final judgment and sentence." *Id*. at 325 (internal quotations omitted). Further, the *Dress* court relied on *Matter of Davis*, 67 Wn. App. 1 (1992), where the DOC transferred Davis to community placement upon release, even though the judgment and sentence did not impose community placement. *Id*. at 4. The court concluded that the DOC's actions were unauthorized, holding that "a trial court must amend the judgment and sentence before DOC can impose community placement not specified in the original sentencing documents." *Id*. at 9.

Here, unlike in *Dress*, the judgment and sentence was silent as to whether Mr. Fields' sentences should run concurrently or consecutively. Additionally, unlike in *Davis*, the DOC, here, added nothing to the judgment and sentence. Instead, the DOC calculated how Mr. Fields' sentences were to be structured. Specifically, relying on RCW 9.94A.589(2)(a), which states, in

1 relevant part, that "whenever a person while under sentence for conviction of a felony commits

2 another felony and is sentenced to another term of confinement, the latter term shall not begin

3 until expiration of all prior terms," the DOC concluded that, absent a court order to the contrary,

4 Mr. Fields' sentences should run consecutively. Even if the DOC's conduct was inconsistent

5 with the spirit of *Dress* and its sister cases, the relevant inquiry is whether it would have been

6 clear to a reasonable official that she was violating Mr. Fields' right to be free from wrongful

7 incarceration by running his sentences consecutively.

8   Plaintiff has failed to show that a genuine issue of material fact exists as to this issue

9 where (a) the judgment and sentence in question was silent as to how Mr. Fields' sentence

10 should run; (b) the relevant statute mandated that sentences run consecutively; and (c) the

11 purportedly relevant state court decisions were distinguishable. Plaintiff argues that the DOC

12 knew that Mr. Fields' sentences should run concurrently because not only did the DOC initially

13 run his sentences as such, but also the subsequent audits allegedly confirmed that his sentences

14 should run as such. However, the DOC appears to have been attempting to correct an earlier

15 error. In any event, plaintiff has failed to show that a clearly established law existed at the time

16 prohibiting the DOC from recalculating Mr. Fields' sentences under RCW 9.94A.589(2)(a).

17   Second, a reasonable official would not have known that she had a duty to investigate a

18 claim for improper calculation of sentences under these circumstances. In its calculations, the

19 DOC was entitled to rely on the state statute and the judgment and sentence in question.

20 Although plaintiff appears to have informed the DOC through an offender's kite that the Kitsap

21 County Superior Court ordered that his sentences run concurrently, the DOC was not required to

22 search for additional records that might affect Mr. Fields' sentences or to move the Kitsap

23 County Superior Court for an amendment of the judgment and sentence in question. *See, e.g.,*

24

*Alston v. Read*, 663 F.3d 1094, 1099-1100 (9th Cir. 2011) ("[prison officials] were entitled to rely on the state statute and the original judgment received from the court in their sentencing calculations and were not required to go in search of additional courthouse records that might affect Alston's sentence beyond what was initially received from the court"). *See also Stein v. Ryan*, 662 F.3d 1114, 1119 (9th Cir. 2011) ("[p]rison officials may properly assume that they have the authority to execute the sentencing orders delivered to them by the court without fear of civil liability"). In fact, Mr. Fields was able to obtain his remedy himself by filing a motion with the court.

It is unclear what motivated the DOC to recalculate Mr. Fields' sentences. Although Ms. Crevier stated in her declaration that she reviewed his sentencing structure as part of a large scale review following *Dress*, she appears to have recalculated Mr. Fields' sentences only after she learned that the DOC had not given Mr. Fields credit for the time served in the Kitsap County Jail. Absent the change in the sentencing calculation, Mr. Fields would have already been held past his maximum release date because, with the credit for the time served in the Kitsap County Jail, his maximum release date with concurrent sentences would have been in or around May 2012.

However, a defense of qualified immunity may not be rebutted by evidence that a defendant's conduct was malicious or otherwise improperly motivated. *Crawford-El v. Britton*, 523 U.S. 574, 587-88 (1998) (evidence concerning defendant's subjective intent is simply irrelevant to that defense). Even if the DOC recalculated Mr. Fields' sentence to cover up its mistake in failing to timely give Mr. Fields credit for the time served in the Kitsap County Jail, to overcome defendants' qualified immunity defense, plaintiff must show that it would have been clear to a reasonable official that calculating Mr. Fields' sentences as consecutive was unlawful

1  under the circumstances. As stated, plaintiff has failed to satisfy this burden: the judgment and

2  sentence in question was silent on the issue; the state statute mandated that the sentences run

3  consecutively; and the purportedly relevant state court decisions were distinguishable.

4        Accordingly, the Court should grant defendants summary judgment on the basis that

5  defendants are entitled to qualified immunity on plaintiff's § 1983 claim.

6  **B. Plaintiff's state claims for false imprisonment and negligent supervision**

7        The Court should allow the parties to show cause why the Court should not decline to

8  exercise supplemental jurisdiction over plaintiff's state law claims.

9        Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental

10  jurisdiction over state law claims if (1) the claims raise novel or complex issues of state law; (2)

11  the claims substantially predominate over the claim or claims the district court has original

12  jurisdiction over; (3) the district court has dismissed all claims over which it has original

13  jurisdiction, (4) in exceptional circumstances, there are other compelling reasons for declining

14  jurisdiction. "While discretion to decline to exercise supplemental jurisdiction over state law

15  claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the

16  values of economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc*., 114 F.3d

17  999, 1001 (9th Cir. 1997) (internal citations omitted).

18        Here, the Court will dismiss all claims over which the Court has original jurisdiction on

19  the basis that defendants are entitled to qualified immunity. Further, plaintiff's claims appear to

20  raise novel or complex issues of state law, as evidenced by the state court appellate decisions.

21        Accordingly, the parties may show cause in writing, if any they may have, no later than

22  April 24, 2015, why the Court should not decline to exercise supplemental jurisdiction over

23  plaintiff's state law claims for false imprisonment and negligent supervision.

24

CONCLUSION

The Court should grant defendants summary judgment on plaintiff's § 1983 claim. The parties may show cause why the Court should not decline to exercise supplemental jurisdiction over plaintiff's remaining state claims.

Accordingly, it is hereby **ORDERED** that

Defendants' Motion and Memorandum for Summary Judgment and Dismissal (Dkt. 14) is **GRANTED IN PART** as follows:

(1) The Motion and Memorandum for Summary Judgment and Dismissal is **GRANTED** as to plaintiff's § 1983 claim, and that claim is dismissed.

(2) Not later than April 24, 2015, the parties may show cause in writing, if any they have, why the Court should not decline to exercise supplemental jurisdiction over plaintiff's state law claims for false imprisonment and negligent supervision. If the parties fail to respond to this order to show cause, or fail to show cause as set forth above, the Court will decline to exercise supplemental jurisdiction over plaintiff's state law claims for false imprisonment and negligent supervision.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 10th day of April, 2015.

_Robert J. Bryan_
ROBERT J. BRYAN
United States District Judge